**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **DARNELL FOREST,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:04CV686-DJS |
| ) | |
| **BARNES-JEWISH HOSPITAL,** ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant hired plaintiff, an African-American male, at age 49 and defendant has since employed plaintiff. Plaintiff filed this complaint asserting that plaintiff was denied a transfer to the day shift, harassed, denied training, and otherwise treated differently by defendant. Specifically, plaintiff alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, in Count I, and race discrimination and harassment in violation of 42 U.S.C. § 1981 in Count II. Now before the Court are defendant's motion for summary judgment and several motions to strike portions of affidavits and statements of material facts.

Evidence submitted in support of and in response to a summary judgment motion must be competent and admissible. Plaintiff has moved to strike paragraphs 4, 5, 6, 9, 11, 14, and 15 of the affidavit of Patrick Barnes [Doc. #114.5] attached to

defendant's reply in support of its motion for summary judgment. Without opposition from defendant, paragraph 4 will be stricken. Paragraph 5 will also be stricken as it contains hearsay, despite Vanessa Jones' affidavit which fails to fully support the hearsay in the paragraph.

Defendant moves to strike paragraphs 34, 40, 56, 81, 94, and 98 of plaintiff's affidavit [Doc. #104], paragraphs 5, 6, 8, 10, 11, and 17-19 of Precious Griffin's affidavit [Doc. #108], paragraphs 7, 8, 11, 13, and 14 of Merkerem Adebe's affidavit [Doc. #93], and paragraph 6 of Galena Siromahkha's affidavit [Doc. #105]. Upon review of the parties' filings and the affidavits at issue, the Court will strike paragraphs 34, 81, 94, and 98 of plaintiff's affidavit and paragraphs 5, 6, 10, and 17-19 of Precious Griffin's affidavit as speculative and beyond plaintiff's and Griffin's personal knowledge.

Although some of the paragraphs to be stricken may contain admissible facts, the parties' failure to set those facts out in separate paragraphs necessitates striking each paragraph in its entirety. The two motions to strike are otherwise unpersuasive and will be denied. Additionally, the Court has not relied on many of the statements at issue in the two motions to strike while making its findings below.

Defendant has also moved to strike plaintiff's statement of material facts arguing that plaintiff has failed to comply with

E.D.Mo. L.R. 4.01, which requires that plaintiff separately set forth in numbered paragraphs each fact with a citation to the record. Plaintiff repeatedly cites multiple facts in a paragraph and does not cite to the record in support. In response to defendant's motion, plaintiff stated that he would attach a "Corrected Statement of Material Facts" which complies with the local rule. No attachment was ever filed with the Court. Plaintiff was notified by the Clerk of the Court that he had erroneously filed a memorandum in opposition in addition to his response, but he never refiled the document.[1] The Court will deny the motion and allow plaintiff's statement of material facts to stand. However, the Court will not scrounge through the rather disorganized record plaintiff has made in search of substantiation for plaintiff's unsupported assertions. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)); see Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999).

The Court now turns to defendant's motion for summary judgment. Plaintiff has only shown that he suffered an adverse employment action with respect to the alleged discriminatory training he received as compared to younger, similarly situated employees. As for the remaining claims, the Court finds as a

---

[1] The Court notes plaintiff's counsel's apparent difficulty with filing documents electronically and recommends that counsel seek training through the Clerk's Office before making further filings.

matter of law that the claims do not allege actionable adverse employment actions, and the Court will grant defendant's motion in part and enter judgment in favor of defendant and against plaintiff as to those claims.

### Background

The Court has viewed the facts in the light most favorable to the non-movant, and the following facts are thereby established for purposes of the summary judgment motion. Plaintiff, an African-American male, was born on October 25, 1950. Plaintiff was 49 when he was initially hired by defendant and is currently 55. Plaintiff was hired by defendant as a part-time laboratory assistant in defendant's Microbiology laboratory for the night shift. Plaintiff started work on September 5, 2000. At the time, plaintiff was not classified as medical technologist. Plaintiff informed Terry Jo Giles, defendant's assistant to the Director of the Department of Laboratories, both before and after he was hired, that he wanted a full-time medical technologist day-shift position. Plaintiff was assigned a full-time lab assistant position in Hematology on the evening shift on April 2, 2001. Plaintiff was assigned to an unregistered medical technologist position on the evening shift on May 27, 2001. Plaintiff received a registered medical technologist certification on March 22, 2002 from the National Credentialing Agency, and was subsequently promoted to Registered Medical Technologist, effective April 28,

4

2002.  In January 2005, plaintiff was moved to the day shift.

When a new technologist joins the Hematology lab, he or she is trained for approximately six months.  That time is spent training the individual on the six work stations or "benches" in the lab.  Each bench involves a different set of procedures for analyzing blood, urine and other specimen samples which the laboratory receives from defendant's medical staff.  The work stations are: Coulter; Coagulation; Urinalysis; Manual Counts/Differential Bench; Body Fluids and Setups.  Since 2000, as a general rule, newly-hired Hematology lab employees receive their training on the day shift from other day-shift employees.

Although plaintiff began work in the Hematology lab in April 2001, his bench training in the Hematology lab did not begin until June 2001.  From April 2, 2001 to September 18, 2002, plaintiff received 32 days of training.  Younger individuals hired after plaintiff received an average of roughly 20 full days of training, per bench, during the six-month training program designed to produce a "fully trained" employee on all benches.  Plaintiff received about one-third of the training provided to similarly situated younger trainees; and this insufficient training time was spread out over three times the length of the average training program.  Plaintiff's training on all six work stations was not completed until November 2003.

On November 17, 2001, plaintiff received a Record of a

Corrective Action for excessive absenteeism. The Corrective Action was issued for seven unscheduled absences since August 2001. Plaintiff was given notice that the Corrective Action would be in effect for one year. Plaintiff made seven requests to transfer to the day shift. All of those requests, except for the last one on December 25, 2002, occurred while plaintiff was on Corrective Action status. The job transfer opening related to the December 25, 2002 request was given instead to James Purnell, a black male who was 44 years old at the time of the transfer. On March 25, 2003, plaintiff received another Corrective Action for excessive absenteeism.

In January 2005, after completing all his training and coming off all forms of Corrective Action, plaintiff received a transfer to the day shift. As a result of plaintiff's transfer, he received the same base pay and benefits, but received a lower overall rate of pay than he was making before due to the loss of his shift pay differential that he received for working the evening shift. Plaintiff's other benefits and conditions of employment remained the same. Plaintiff's rate of pay never decreased during his training and his benefits always remained the same.

## Discussion

Plaintiff alleges that defendant discriminated against plaintiff on the basis of his age in violation of the ADEA in that: 1) "plaintiff did not receive the same training from defendant in

all requisite performance areas in the Hematology Laboratory as defendant provided to significantly younger, similarly situated employees"; 2) "defendant denied plaintiff requested transfers, as well as developmental opportunities"; 3) "defendant subjected plaintiff to excessive scrutiny and criticism of his job performance"; 4) "defendant subjected plaintiff to testing not required of similarly situated younger employees"; 5) "defendant consistently treated plaintiff differently and less favorably than younger employees with regard to job assignments"; and 6) "defendant required plaintiff to remain on defendant's generally less desirable [evening] shift from September 2000 to January 2005, despite [plaintiff's] repeated requests for transfer to the generally more desirable [day] shift to which less senior, younger employees have been transferred in the interim." (3d Am. Compl. [Doc. #45] at 3-4.)

The ADEA requires that, at least sixty days prior to filing a civil action, the claimant assert his discrimination claims in a charge filed with the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. § 626(d). This procedure satisfies the exhaustion requirement for the allegations asserted in the administrative charge, as well as for allegations like or reasonably related to those asserted in the administrative charge. See Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000).

Plaintiff's EEOC charge, filed February 10, 2003, alleged that plaintiff was denied training and a transfer from the evening shift to the day shift and was forced to take a test to be considered for the day shift due to plaintiff's age. (Pl.'s Charge of Discrimination [Doc. #65.15].) The charge contained no reference to defendant's excessive scrutiny and discriminatory job assignments. Plaintiff's claims that defendant subjected plaintiff to excessive scrutiny and criticism of his job performance and discriminated against him in the administration of job assignments are not sufficiently like or related to his transfer, training, and testing claims to be deemed exhausted by the limited charge he filed. See Kells, 210 F.3d at 836. Because plaintiff has not administratively exhausted the excessive scrutiny and discriminatory job assignment allegations, defendant is entitled to summary judgment on the ADEA claims asserted based on them.

Plaintiff also alleges that defendant discriminated against plaintiff on the basis of his race in violation of 42 U.S.C. § 1981 in that: 1) plaintiff did not receive the same training from defendant in all requisite performance areas as white, similarly situated evening shift employees who were less senior in tenure than plaintiff; 2) "defendant subjected plaintiff to excessive scrutiny and criticism of his job performance"; 3) "defendant subjected plaintiff to testing . . . not required of similarly situated white employees"; 4) "defendant treated

plaintiff differently and less favorably than white employees with regard to job assignments on the evening shift in the Hematology lab"; 5) "defendant has assigned plaintiff to the generally less desirable [evening] shift from September 2000 to January 2005, despite [plaintiff's] repeated requests for transfer to the generally more desirable [day] shift to which white employees have been transferred in the interim"; 6) "defendant has monitored plaintiff's break and lunch time usage while not doing so in the case of similarly situated white employees."[2] (3d Am. Compl. [Doc. #45] at 5-7.)

The Court is left to consider plaintiff's allegations of transfer, testing, and training discrimination due to plaintiff's age under the ADEA and plaintiff's allegations under § 1981. The Court analyzes ADEA claims and § 1981 claims in the same manner. Davis v. KARK-TV, Inc., 421 F.3d 699, 703 (8th Cir. 2005); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

> [P]laintiff must first establish a prima facie case of discrimination, which has the effect of creating a legal presumption of unlawful discrimination. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the employer meets this burden, the presumption created by the prima facie case is rebutted and drops from the case. The burden of production then shifts back to the plaintiff to show that

---

[2] Claims under 42 U.S.C. § 1981 do not require that plaintiff exhaust administrative remedies before filing suit. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004).

9

> the proffered reason was a pretext for unlawful discrimination. This last step requires a two-part showing -- the plaintiff must show: (1) that the employer's proffered reason is pretextual; and (2) that intentional discrimination is the real reason.

Russell v. Men's Wearhouse, Inc., 170 F.3d 1156, 1157 (8th Cir. 1999) (internal citations omitted); see also Ryther v. KARE 11, 108 F.3d 832, 838 (8th Cir. 1997) (en banc).

To make a prima facie showing of discrimination under the ADEA plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the positions for which he applied; (3) he suffered an adverse employment action because he was not hired for the positions he applied for despite being sufficiently qualified; and (4) the job for which he applied was filled by a person sufficiently younger to permit an inference of age discrimination. Simonson v. Trinity Reg'l Health Sys., 336 F.3d 706, 710 (8th Cir. 2003). To make a prima facie showing of discrimination under § 1981, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently. Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003); Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000). As part of all his claims, plaintiff must demonstrate that he suffered an adverse employment action. The Court will deny defendant's motion for

summary judgment in part with respect to plaintiff's disparate training claim under the ADEA and grant the motion in part with respect to the remaining allegations of discrimination for the following reasons.

**A. Plaintiff must make a prima facie showing of an adverse employment action under the ADEA and section 1981**

Evidence that plaintiff experienced a mere inconvenience or alteration of job duties is insufficient to satisfy the required threshold showing of an adverse employment action. <u>Kindred v. Northome/Indus. Sch. Dist.</u>, 154 F.3d 801, 804 n.4 (8th Cir. 1998) (citing <u>Harlston v. McDonnell Douglas Corp.</u>, 37 F.3d 379, 382 (8th Cir. 1994)). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." <u>Spears v. Missouri Dep't of Corr. & Human Res.</u>, 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." <u>Id</u>. However, minor changes in duties or working conditions that cause no materially significant disadvantage do not. <u>Kerns v. Capitol Graphics, Inc.</u>, 178 F.3d 1011, 1016-17 (8th Cir. 1999).

**1. Plaintiff's failure to transfer claim does not assert an adverse employment action**

Plaintiff asserts that defendant's refusal to transfer him from the evening shift to the day shift constitutes an adverse employment action. However, it is well established that "[a]

11

transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action." Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997); Tyes v. Wilhoit, 7 Fed. Appx. 538, 539 (8th Cir. 2001) (affirming district court's finding that plaintiff had suffered no adverse employment action by denial of a lateral transfer). To be an adverse employment action, a purely lateral transfer must also include "some other materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 844 (D.C. Cir. 2001) (citations and quotations omitted).

A mere shift transfer, or a denial of a shift transfer, alone does not constitute an adverse employment action. Compare Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 886-87 (6th Cir. 1996) ("A mere shift transfer does not amount to an adverse employment action."), Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 769-71 (5th Cir. 2001) (holding that a shift change, without more, is not an adverse employment action under the anti-retaliation provision of the Family and Medical Leave Act), Grube v. Lau Indus., Inc., 257 F.3d 723, 728 (7th Cir. 2001) (finding that in the ADEA context, an "[employer's] decision to change [an employee's] working hours certainly does not rise to the level of an adverse employment action."), with Freedman, 255 F.3d at 844 (finding that a transfer to the night shift from the day shift that

12

interferes with an employee's class schedule may constitute an adverse employment action despite a raise in pay). Plaintiff asserts that the day shift allows a more convenient schedule, is considered more prestigious by hospital staff, and exposes employees to certain testing and equipment that is only utilized during the day shift. However, the denial of a transfer to a more prestigious position does not constitute an adverse employment action. See Ledergerber, 122 F.3d at 1144 (holding that a reassignment with loss of status and prestige does not constitute an adverse employment action).

Plaintiff has not shown that anything but minor changes in conditions would have taken place were plaintiff transferred to the day shift at an earlier date. Plaintiff cites to Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997), where the Eighth Circuit upheld a jury verdict finding that a transfer to a position which lacked supervisory status, had fewer opportunities for salary increases, and offered the plaintiff little opportunity for advancement was an adverse action despite a salary increase. Id. However, in contrast to Davis, plaintiff was not assigned a new position, he was denied a *shift* transfer. Defendant's refusal to transfer plaintiff to the day shift does not constitute an adverse employment action.

2. **Plaintiff's disparate training claim under the ADEA does assert an adverse employment action**

The Court next turns to plaintiff's allegation that the disparate training schedule and opportunities offered to plaintiff as compared to other similarly situated employees constitute an adverse employment action. Plaintiff asserts that defendant withheld timely, complete training for plaintiff on the various work stations in the Hematology lab as provided to significantly younger, similarly situated employees. The Seventh Circuit has held that to make a prima facie showing of failure to train, a plaintiff must show:

> (1) that [he] is a member of a protected group; (2) that [defendant] provided training to its employees; (3) that [plaintiff] was eligible for training; and (4) that [he] was not provided training under circumstances giving rise to an inference of discrimination, *i.e.*, that [he] was denied training given to other similarly situated employees who were not members of the protected group.

Pafford v. Herman, 148 F.3d 658, 667 (7th Cir. 1998).

While an employer's denial of an employee's request for more training is not without more an adverse employment action, Griffith v. City of Des Moines, 387 F.3d 733, 737 (8th Cir. 2004), an employer may not discriminate in the provision of training for employees. The parties' agreement that plaintiff received one-third the training in three times the amount of time as compared to younger, similarly situated employees satisfies the fourth prong of the prima facie case with respect to plaintiff's claim under the ADEA. Defendant does not argue, and this Court does not find, that any other elements of plaintiff's prima facie case are lacking with

respect to plaintiff's claim under the ADEA.

### 3. **Plaintiff's discriminatory testing claim does not assert an adverse employment action**

Plaintiff was administered a proficiency assessment tool ("PAT") test and two comprehensive tests -- one on January 8, 2003 and one on January 10, 2003. Plaintiff fails to establish how the application of these tests constitutes an adverse employment action. Plaintiff argues that the tests were a prerequisite to his transfer to the day shift. However, as discussed *supra*, denying or delaying plaintiff's transfer to the day shift is not an adverse employment action.

### 4. **Plaintiff's claims under section 1981**

As discussed *supra* with respect to plaintiff's claims under the ADEA, plaintiff cannot establish a prima facie case of transfer and testing discrimination under § 1981 because plaintiff's allegations do not constitute adverse employment actions. Additionally, plaintiff never supports his assertion that a discrepancy exists between the training he received as compared to white, similarly situated employees. Accordingly, the Court finds as a matter of law that plaintiff's prima facie case of discriminatory training is shown only with respect to his claim under the ADEA and not § 1981. Three allegations of employment discrimination under § 1981 remain before the Court, namely: 1) subjecting plaintiff to excessive scrutiny and criticism for his job performance; 2) treating plaintiff differently and less

favorably than white employees with regard to job assignments on the evening shift in the Hematology lab; and 3) monitoring plaintiff's breaks and lunch time, while not doing so for similarly situated, white employees.

These three allegations do not constitute adverse employment actions. Increased scrutiny and formal criticisms, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions. See Stewart v. Evans, 275 F.3d 1126, 1136 (D.C. Cir. 2002), cited with approval in Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 892 n.5 (8th Cir. 2005); Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 169 (6th Cir. 2004) (holding that increased scrutiny is not tantamount to an adverse employment action). Nor does the assignment of less desirable tasks when accompanied with a promotion and a pay increase. Jacob-Mua v. Veneman, 289 F.3d 517, 522 (8th Cir. 2002) (finding that work assignments not commensurate with plaintiff's skills, abilities and job functions do not rise to the level of an adverse employment action when plaintiff's grade and pay increased and plaintiff was given other benefits). Although plaintiff never explains what the allegedly less desirable tasks were, plaintiff's pay did increase over time. Finally, plaintiff admitted in his deposition that he was never disciplined in any way for his break or lunchtime usage. (Pl.'s Depo. [Doc. #66.6] at 368.)

Accordingly, the Court is not persuaded that plaintiff's claims of excessive scrutiny, less desirable job assignments, and break monitoring constitute adverse employment actions.

Plaintiff's response to defendant's motion for summary judgment does allege that the work environment was hostile and that he was once called "boy" by a co-worker.[3]  However, alleged racial slurs alone do not render a work environment hostile as a matter of law, Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 892 (8th Cir. 2005), and stray remarks by a co-worker are insufficient to state a claim of discrimination against the employer. Calder v. TCI Cablevision, 298 F.3 723, 730 (8th Cir. 2002). Plaintiff cites to Ross v. Douglas County, 234 F.3d 391, 396-97 (8th Cir. 2000), as an analogous case where harassment affected a term, condition, or privilege of a plaintiff's employment. However, in Ross, the court focused on a supervisor's repeated use of racial epithets. Id. Plaintiff has not established that he had continuous problems, and the problems he has had have been with co-workers. Furthermore, plaintiff admits that none of defendant's hospital supervisors ever made a negative comment to plaintiff about his age or race. (Pl.'s Depo. [Doc. 66.3] at 22 & [Doc. #66.6] at 5.) The Court has considered the alleged harassment of other employees in analyzing the severity and pervasiveness of the alleged hostile environment. Howard v. Burns Bros., Co., 149 F.3d 835, 838 (8th Cir. 1998).

---

[3] Plaintiff's third amended complaint, however, does not specifically allege that his work environment was hostile.

However, after considering plaintiff's submissions of statements by other lab employees, the Court is still not persuaded that plaintiff's evidence could reasonably support a hostile work environment.

**B.   Defendant's reasons for the alleged training regimen may be a pretext for unlawful discrimination**

Plaintiff establishes a prima facie case that defendant's training regimen discriminated against plaintiff on the basis of his age in violation of the ADEA. Defendant asserts and supports with evidence that plaintiff was not trained during the day shift because plaintiff was attending classes during the day, employees were not always available to provide training on the evening shift, and plaintiff's performance during training prolonged the process. Defendant has articulated non-discriminatory reasons for the alleged adverse employment actions and the presumption created by the prima facie case is successfully rebutted.

Plaintiff has the burden of production to show that the proffered reason was a pretext for unlawful discrimination. The Court cannot find as a matter of law that plaintiff is unable to meet this burden. Plaintiff supports his assertions that he could have been trained during the day shift because his classes during the day ended in May 2002 and because he was willing stop attending classes to switch to the day shift for training. Additionally, plaintiff offers evidence that his training period was effectively extended by ten months because of a single instance where plaintiff

18

incorrectly entered a cell count into his computer and declined to fix the known error until after his supervisor brought it to his attention. Furthermore, plaintiff supports his assertions that his abilities and problems during training did not differ from those of the other employees in the lab. The Court will therefore deny defendant's motion for summary judgment on plaintiff's discriminatory training claim under the ADEA. Remaining before the Court is plaintiff's claim under the ADEA that plaintiff did not receive the same training from defendant in all requisite performance areas in the Hematology laboratory as defendant provided to significantly younger, similarly situated employees.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #63] is denied in part with respect to plaintiff's discriminatory training claim under the ADEA and granted in part with respect to plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's statement of material facts [Doc. #115] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to strike portions of the affidavits of plaintiff Darnell Forest, Precious Griffin, Meskerem Abebe, and Galina Siromakha [Doc. #119] is granted in part, and paragraphs 34, 81, 94, and 98 of plaintiff's affidavit and paragraphs 5, 6, 10, and 17-19 of Precious Griffin's affidavit are stricken. In all other respects, the motion is

denied.

**IT IS FURTHER ORDERED** that defendant's erroneously filed motion to strike portions of the affidavits of plaintiff Darnell Forest, Precious Griffin, Meskerem Abebe, and Galina Siromakha [Doc. #117] is denied as duplicative of defendant's other motion filed under the same name.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike portions of the affidavit of Patrick Barnes [Doc. #124] is granted in part and paragraphs 4 and 5 of Patrick Barnes's affidavit are stricken. In all other respects, the motion is denied.


Dated this ___10th___ day of May, 2006.


                                      /s/Donald J. Stohr
                                      UNITED STATES DISTRICT JUDGE